UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
VICTOR M. HERRERA,

                        Plaintiff,

           - against -

DERMOT SHEA, Commissioner of the City of
New York Police Department; STEVEN
BANKS, Commissioner of the City of New
York Human Resource Administration;
SAMUEL SPITZBERG; DEXTERLY
FREEMAN; NIGEL MARKS; CITY OF NEW
YORK HUMAN RESOURCE
ADMINISTRATION; HRA SERGEANT
CURCIO; HRA SERGEANT KNOX;
HRA LIEUTENANT WRIGHT; HRA
OFFICER ANNETTE VASQUEZ; HRA
OFFICER HENNA; CITY OF NEW YORK
POLICE DEPARTMENT; LIEUTENANT
VASQUEZ, NYPD 84th Precinct; JOHN DOE,
NYPD 84th Precinct Uniformed Officer; JANE
DOE, NYPD 84th Precinct Uniformed Officer;
JANE DOE, NYPD Plainclothes Officer #1;
JANE DOE, NYPD Plainclothes Officer #2;
SUMMIT SECURITY; JOHN DOE, Summit
Security Supervisor; JOHN DOE, Summit
Security Officer #1; JOHN DOE, Summit
Security Officer #2; OFFICE OF
TEMPORARY AND DISABILITY
ASSISTANCE; and CITY OF NEW YORK,

                   Defendants.[1]

**MEMORANDUM & ORDER**
20-CV-3665 (PKC) (VMS)

---

     [1] The defendants listed in the above caption are compiled from the parties identified in the caption of Plaintiff's Complaint and the parties described as defendants in the body of the Complaint (Dkt. 2, ¶¶ 4–23), which do not match. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." (emphasis omitted) (internal quotation and citations omitted)).  As explained herein, Plaintiff shall be given leave to file an amended complaint to state claims against some, but not all, of these defendants.  Plaintiff's amended complaint must identify each defendant in both the caption and the body of the document.  Plaintiff must also ensure that the parties are identified consistently. For example, in the present Complaint, Defendant Dexterly Freeman is variously identified as

```
--------------------------------------------------------x
```

PAMELA K. CHEN, United States District Judge:

Plaintiff Victor M. Herrera ("Plaintiff") brings this *pro se* action under 42 U.S.C. § 1983, alleging violations of his federal constitutional, state constitutional, and state common-law rights.[2] His complaint alleges claims against a long list of defendants—including the City of New York, the City of New York Human Resource Administration ("HRA"), the City of New York Police Department ("NYPD"), Summit Security ("Summit"), the New York State Office of Temporary and Disability Assistance ("OTDA"), and various individuals associated with these entities in their official and individual capacities. Plaintiff's application to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915 is granted. For the reasons discussed below: (1) Plaintiff's federal constitutional claims are allowed to proceed against Defendants HRA Sergeant Knox, HRA Officer Annette Vasquez, HRA Officer Henna, NYPD Uniformed Officer John Doe of the 84th Precinct, NYPD Uniformed Officer Jane Doe of the 84th Precinct, NYPD Plainclothes Officer Jane Doe #1, and NYPD Plainclothes Officer Jane Doe #2; and (2) Plaintiff's claim under Article I, § 12 of the New York State Constitution against the City of New York is allowed to proceed. The claims against the HRA, the NYPD, and the OTDA are dismissed, as they are entities that cannot be sued.

---

"Dexterly Freeman" (*id.* caption, ¶¶ 7, 36, 42), "Dexterly Freedman" (*id.* ¶¶ 21, 35), and "Dexter Freedman" (*id.* ¶ 9). Moreover, the Complaint's caption identifies Attorney "Mark Nigel" as a defendant, but the body of the Complaint refers to "Nigel Marks" throughout. (*See id.* ¶¶ 36, 42.) For purposes of this Order, the Court assumes that "Mark Nigel" and "Nigel Marks" are the same person, and the Court uses "Dexterly Freeman" and "Nigel Marks" for consistency.

[2] This action was transferred to this Court from the United States District Court for the Southern District of New York by order on August 6, 2020. (Dkt. 5.)

Plaintiff is granted 45 days' leave to file an amended complaint to allege claims against NYPD Commissioner Dermot Shea, Samuel Spitzberg, HRA Commissioner Steven Banks, Dexterly Freeman, HRA Sergeant Curcio, HRA Lieutenant Wright, NYPD Lieutenant Vasquez of the 84th Precinct, Summit, Summit Supervisor John Doe, Summit Officer John Doe #1, Summit Officer John Doe #2, and Attorney Nigel Marks.   Plaintiff is also given leave to amend his complaint with respect to claims dismissed below against the City of New York and the individual HRA and NYPD defendants against whom Plaintiff's federal constitutional claims shall proceed.[3]

## BACKGROUND

Plaintiff alleges the following facts, which are accepted as true at this stage in the case.  *See Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) (per curiam) (citation omitted).

On December 19, 2019, Plaintiff had a scheduled hearing concerning his "Social Security Benefits"[4] at an HRA office in Brooklyn, New York.  (Complaint, Dkt. 2, ¶¶ 28, 31; *see also id.* ¶¶ 10–11, 18–20.)  When Plaintiff arrived for the hearing, however, Summit Officer John Doe #1 "raised an alarm" and summoned HRA Officer Annette Vasquez, who allegedly had had "previous contact with [P]laintiff and was familiar with [Plaintiff's] reform activities and complaints pursued against" Summit Officer John Doe #1.  (*Id.* ¶ 29.)  According to Plaintiff, Summit Officer John Doe #1 "ha[d] previously created a hostile environment that resulted in [Plaintiff] being barred

---

[3]  Specifically, those dismissed claims include: the Section 1983 claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), against the City of New York; the claims under the New York State Constitution other than that under Article I, § 12 against the City of New York; the conspiracy claim; and the malicious-prosecution and abuse-of-process claims.

[4]  Although the Complaint uses the term "Social Security Benefits," it is unclear if Plaintiff actually means "social services" benefits.  Elsewhere, the Complaint references benefits under the "Supplemental Nutrition Assistance Program," *i.e.*, food stamps (Dkt. 2, ¶ 35), and "Social Services Benefits" (*id.* ¶ 50).

from all access to the procedural forum[,] in retaliation for having invoked his constitutional right to petition for redress of grievances." (*Id.*)

On this occasion, Summit Officer John Doe #1 allegedly alerted HRA Officer Annette Vasquez after Plaintiff refused to show certain documents that Plaintiff believed to be protected as private under the Health Insurance Portability and Accountability Act. (*See id.* ¶¶ 29–31.) Upon being summoned, HRA Officer Annette Vasquez "engaged [P]laintiff in a hostile confrontation." (*Id.* ¶ 30.) At some point thereafter, NYPD Lieutenant Vasquez and NYPD Uniformed Officers John Doe and Jane Doe, all from the 84th Precinct, arrived. (*See id.* ¶¶ 32–33.) NYPD Uniformed Officers John Doe and Jane Doe "forcefully pushed [P]laintiff against the wall" and handcuffed him. (*Id.* ¶ 32.) Meanwhile, according to Plaintiff, NYPD Lieutenant Vasquez "failed to appropriately supervise his subordinate NYPD Police Officers and authorized an unlawful arrest" of Plaintiff. (*Id.* ¶ 33.) Plaintiff was escorted out of the building, where NYPD Uniformed Officer John Doe eventually released him and returned his property. (*Id.* ¶¶ 33–34.)

As Plaintiff proceeded toward the subway to go home, HRA Sergeant Knox, HRA Officer Henna, and HRA Officer Annette Vasquez allegedly "accosted" Plaintiff and "forcefully pushed [him] against a gate by the Brooklyn Law School." (*Id.* ¶ 34.) Then, with the help of NYPD Plainclothes Officers Jane Doe #1 and Jane Doe #2, the HRA officers "forcefully plac[ed] [P]laintiff in restraints and unlawfully arrest[ed]" him. (*Id.*)

Plaintiff avers that, "during the course of actions" leading up to and including the events on December 19, 2019, he was communicating with HRA Sergeant Curcio, demanding to speak with Dexterly Freeman, the Deputy Commissioner of Police Operations for the HRA. (*Id.* ¶¶ 6–7, 35.) Plaintiff allegedly had "had prior communication" with Dexterly Freeman "regarding the acts and continued acts of his subordinate employees in obstructing or interfering with" Plaintiff's

process of applying for benefits.  (*Id.* ¶ 35.)  According to Plaintiff, these acts of obstruction or interference were "acts of retaliation motivated by [Plaintiff's] pursuit of his constitutionally protected activity." (*Id.* ¶ 36.)  Plaintiff moreover alleges that, "[s]ince March 2018," he "has been subjected to a host of debilitating practices intended to discourage him from his well-known reform activities," including being "the subject of wrongful arrest and restraint of liberty."  (*Id.* ¶ 37.) "[P]laintiff has filed numerous grievances and complaints" with HRA Commissioner Steven Banks, Dexterly Freeman, OTDA Director of Hearings Samuel Spitzberg, and Attorney Nigel Marks—all "to no avail."  (*Id.* ¶ 36; *see also id.* ¶¶ 5–6.)  This lack of response, in Plaintiff's view, "was part of a widespread pattern of behavior," with Defendants "repeatedly turn[ing] a blind[] eye" and "taking no preventative precautions to divert what they were aware were retaliatory actions[.]"  (*Id.* ¶ 36.)

Plaintiff also alleges that at some point, NYPD and HRA officers, Summit Officer John Doe #1, Summit Officer John Doe #2, Summit Supervisor John Doe, and the City of New York maliciously and falsely commenced criminal proceedings against Plaintiff "to cover up their own misconduct and unwarranted use of force." (*Id.* ¶¶ 63–64.)  The criminal charges were ultimately dropped.  (*Id.* ¶ 66.)

Plaintiff alleges seven claims: (1) a claim under 42 U.S.C. § 1983 for false arrest, wrongful imprisonment, and excessive force in violation of the Fourth and Fourteenth Amendments to the United States Constitution (*id.* ¶¶ 39–40); (2) a claim under 42 U.S.C. § 1983 for deprivation of the rights to petition and expression in violation of the First and Fourteenth Amendments to the United States Constitution (*id.* ¶¶ 42–43); (3) a claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978) (*id.* ¶¶ 45–53); (4) an equal-protection claim under Article I, § 11 of the New York State Constitution (*id.* ¶ 55); (5) a claim of unlawful search and seizure, false

arrest, wrongful imprisonment, and excessive force under Article I, § 12 of the New York State Constitution (*id.* ¶¶ 57–58); (6) a claim of conspiracy to deprive Plaintiff of his constitutional rights (*id.* ¶¶ 60–61); and (7) state common law claims of malicious abuse of process and malicious prosecution (*id.* ¶¶ 63–67).  Plaintiff seeks declaratory, injunctive, and monetary relief.  (*Id.* at 14.)

## DISCUSSION

### I.    Legal Standard

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Although all factual allegations contained in the Complaint are assumed to be true, this rule does not extend "to legal conclusions."  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).

At the same time, *pro se* pleadings are to "be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, federal courts "remain obligated to construe a *pro se* complaint liberally").  This tenet of construing *pro se* complaints liberally holds true "particularly when they allege civil rights violations."  *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004) (citing *Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001)); *accord Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).  Nevertheless, under 28 U.S.C. § 1915(e)(2)(B), a district court shall dismiss an IFP action where it is satisfied that the action

"(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

## II.      Analysis

### A.      Claims Against Agencies of the City and the State of New York

Claims against agencies of the City of New York, including the HRA and the NYPD, are not allowed, and instead, must be brought against the City of New York.  *See* N.Y. City Charter, ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Jenkins v. City of New* York, 478 F.3d 76, 93 n.19 (2d Cir. 2007) ("[T]he NYPD is a non-suable agency of the City." (citation omitted)); *Gault v. Admin. Fair Hearing at 14 Boerum Place*, No. 14-CV-7398 (PKC), 2016 WL 3198280, at *3 (E.D.N.Y. June 8, 2016) ("[T]he New York City Department of Homeless Services as an agency of the City of New York is not a suable entity." (citation omitted)).

Additionally, under the Eleventh Amendment to the United States Constitution, "neither a State nor agencies acting under its control may 'be subject to suit in federal court'" unless the State has waived its immunity or Congress has abrogated such immunity.  *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) (quoting *Welch v. Tex. Dep't of Highways & Public Transp.*, 483 U.S. 468, 480 (1987)); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) ("The Eleventh Amendment bars [Section 1983] suits unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." (internal citations omitted)).  New York "has not waived its immunity as to suits seeking either monetary or injunctive relief in federal court." *Goonewardena v. New York*, 475 F. Supp. 2d 310, 322 (S.D.N.Y. 2007) (citing N.Y. Court of Claims Act § 8 (McKinney 2006)); *see also Bertoldi v. State*, 712 N.Y.S.2d 113, 115 (App. Div.

2000) ("It is well settled that the Court of Claims has exclusive jurisdiction over actions for money damages against the State, State agencies, or State officials acting in their official capacities in the exercise of governmental functions." (citations omitted)).  Nor is § 1983 an abrogation of state sovereign immunity.  *See Will*, 491 U.S. at 66.

Therefore, to the extent that Plaintiff brings claims against the HRA, the NYPD, and the OTDA as entities, those claims are not allowed, and are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).

**B.     Section 1983 Claims**

"Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law."  *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) (quoting 42 U.S.C. § 1983).  "Thus, to state a claim under Section 1983, a plaintiff must allege (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws, and (2) that the deprivation was 'committed by a person acting under the color of state law.'" *Harrison v. New York*, 95 F. Supp. 3d 293, 321 (E.D.N.Y. 2015) (quoting *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010)).

The Court begins its analysis with the Section 1983 claims against Defendants in their official capacities, which are essentially claims against the City and the State of New York, and then turns to the claims against Defendants in their individual capacities.

1.     Official-Capacity and *Monell* Claims

Although state and local officials "literally are persons," a suit against such an official in their "official capacity is not a suit against the official but rather is a suit against the official's office," and immunity under the Eleventh Amendment applies.  *Will*, 491 U.S. at 71 (citations omitted); *see also Monell*, 436 U.S. at 690 n.55 ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent[.]").  As

8

explained above, New York has not waived its immunity under the Eleventh Amendment.  *See supra* (citing *Goonewardena*, 475 F. Supp. 2d at 322; *Bertoldi*, 712 N.Y.S.2d at 115).  Eleventh Amendment immunity, however, does not extend to suits seeking prospective injunctive relief against officials.  *Will*, 491 U.S. at 71 n.10 (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Ex parte Young*, 209 U.S. 123, 159–60 (1908)).  Moreover, local governments and their officials may be sued directly under § 1983 for monetary, injunctive, or declaratory relief.  *Monell*, 436 U.S. at 690.

Under *Monell*, a municipality is liable "where [its] failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."  *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (citations omitted); *accord Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013).  *Monell* liability cannot be based on a theory of respondeat superior, meaning that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agent."  *Monell*, 436 U.S. at 691, 694.  But a local government's deliberate indifference in the face of constitutional violations perpetrated by its employees or subordinates can be a basis for *Monell* liability.  *See Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 126 (2d Cir. 2004) ("[W]here a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a city policy or custom that is actionable under § 1983." (internal quotations and citations omitted)); *see also Cash v. County of Erie*, 654 F.3d 324, 334 (2d Cir. 2011) ("A municipal policy may be pronounced or tacit and reflected in either action or inaction.").  "[B]ecause a single action on a policymaker's part is sufficient to create a municipal policy, a single instance of deliberate indifference to subordinates' actions can provide a basis for municipal liability."  *Amnesty Am.*, 361 F.3d at 127; *see also Pembaur v. City*

*of Cincinnati*, 475 U.S. 469, 480 (1986) ("[M]unicipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances.").  Deliberate indifference, however, "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of [their] action."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Board of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)).  Whether a plaintiff meets this standard "depends on a careful assessment of the facts at issue in a particular case."  *Cash*, 654 F.3d at 334 (citing *Amnesty Am.*, 361 F.3d at 128).

Here, Plaintiff alleges that New York City officials knew or should have known about, yet tacitly condoned, retaliatory acts and other constitutional violations committed by employees or subordinates against Plaintiff, including the alleged incidents on December 19, 2019.  (*See* Complaint, Dkt. 2, ¶¶ 36, 45–53.)  Yet, the only factual allegations in the Complaint are that Plaintiff "filed numerous grievances and complaints" with the City, all "to no avail," and that since March 2018, Plaintiff has been "subjected to a host" of events like the one on December 19, 2019, "at the hands of numerous employees, agents, officers, and servants of the City of New York." (*Id.* ¶¶ 36–37, 47.)  The other statements in the Complaint are merely conclusory:

- "[The City] repeatedly turned a blind[] eye . . . , taking no preventative precautions to divert what they were aware were retaliatory actions[.]"  (*Id.* ¶ 36)

- "Defendant City of New York has . . . developed, implemented, enforced, encouraged, and sanctioned a de facto policy, practice, and/or custom of unlawfully interfering with and/or arrest[ing], without reasonable suspicion or probable cause, individuals who exercise their rights under the First Amendment by engaging in misconduct intended to discourage and deter the pursuit of protected activity."  (*Id.*)

- "[D]efendant[] City of New York . . . failed to take corrective measures to deter the illegal action, and ratified the behavior by failing to respond to [Plaintiff's] grievances and complaints."  (*Id.* ¶ 47.)

- "Defendant City of New York planned and implemented a policy, practice, custom and usage [of] controlling complaining clients in the [HRA] Business Offices by permitting the NYPD, HRA Police[,] along with Summit [] . . . [,] to use

discriminatory practices and/or procedures that directly criminalized [Plaintiff][.]" (*Id.* ¶ 48.)

- "[P]rior to March 2018 and thereafter, the City of New York was aware of numerous complaints of Police Misconduct involving the use of unwarranted and unjustified . . . excessive force and retaliatory use of force against [P]laintiff by members of the NYPD and HRA Police."  (*Id.* ¶ 51.)

- "It was the policy and/or custom of the City of New York to investigate citizen complaints of Police Misconduct inadequately and improperly, and acts of misconduct were instead tolerated by the City of New York, including but not limited to, incidents listed above."  (*Id.* ¶ 53.)

Even the few factual allegations contained in the Complaint do not provide details, such as the number and content of the grievances, when and how the grievances were made, or what other allegedly retaliatory acts Plaintiff has experienced since March 2018, besides the incidents on December 19, 2019.  Overall, the factual content of the Complaint does not give rise to a reasonable inference that some action or deliberate indifference by the City of New York plausibly led to Plaintiff's alleged constitutional violations.  Therefore, Plaintiff's *Monell* claim against the City of New York fails and is dismissed.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *see also Johnson v. City of New York*, No. 18-CV-4030 (MKB), 2020 WL 249100, at *2 (E.D.N.Y. Jan. 16, 2020) (dismissing a *Monell* claim because the plaintiff failed to allege facts "to support an inference that the City had an official policy or custom that caused a violation of any federally protected right").  Plaintiff is, however, given leave to amend his pleading as to this claim, and to properly allege facts that would permit the "careful assessment" of the individual circumstances that is required when evaluating a *Monell* claim.  *See Cash*, 654 F.3d at 334; *Amnesty Am.*, 361 F.3d at 128; *see also Cruz v. Gomez*, 202 F.3d 593, 597–98 (2d Cir. 2000) ("[A] *pro se* plaintiff who is proceeding *in forma pauperis* should be afforded the same opportunity as a *pro se* fee-paid plaintiff to amend his complaint prior to its dismissal for failure to state a claim, unless the court can rule out any possibility, however

unlikely it might be, that an amended complaint would succeed in stating a claim." (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999))).

Likewise, Plaintiff's official-capacity claims against OTDA Director of Hearings Samuel Spitzberg are dismissed with leave to amend.  As an official of the State of New York, Spitzberg may be sued in his official capacity only for prospective injunctive relief, not monetary damages. *See Will*, 491 U.S. at 71 n.10; *Ex parte Young*, 209 U.S. at 159–60.  The only allegation in the Complaint relating to Spitzberg specifically is that Plaintiff filed "numerous grievances and complaints" with various officials, including Spitzberg, which were ignored.  (Complaint, Dkt. 2, ¶ 36.)  This allegation does not make clear what, if any, prospective injunctive relief Plaintiff is seeking against Spitzberg specifically.  Thus, Plaintiff's claims against Spitzberg in his official capacity are dismissed with leave to amend.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Cruz*, 202 F.3d at 597–98.

### 2.   Individual-Capacity Claims

The Court now turns to the Section 1983 claims against Defendants in their individual capacities.

### a.   NYPD and HRA Officers Involved in the Alleged December 19, 2019 Incidents

Plaintiff asserts Section 1983 claims for Fourth and Fourteenth Amendment violations against individual NYPD and HRA officers involved in the alleged incidents on December 19, 2019.  (Complaint, Dkt. 2, ¶¶ 39–40.)  Based on the factual allegations in the Complaint, summarized above and construed liberally in Plaintiff's favor, Plaintiff has stated a plausible claim at this stage in the proceedings.  Therefore, Plaintiff's Section 1983 claims alleging Fourth and Fourteenth Amendment violations against HRA Sergeant Knox, HRA Officer Annette Vasquez, HRA Officer Henna, NYPD Uniformed Officer John Doe of the 84th Precinct, NYPD Uniformed

Officer Jane Doe of the 84th Precinct, NYPD Plainclothes Officer Jane Doe #1, and NYPD Plainclothes Officer Jane Doe #2 are allowed to proceed.

> b.   Summit and Summit Officers

Plaintiff also asserts Section 1983 Fourth and Fourteenth Amendment claims against "Summit Security and its officers." (*Id.* ¶ 39.)  These claims against Summit and its officers, however, are deficient as pleaded.

Because Section 1983 is a remedy for deprivations of federal rights committed by persons "acting under the color of state law," usually "private citizens and entities are not subject to Section 1983 liability."  *Mizrahi v. City of New York*, No. 15-CV-6084 (ARR) (LB), 2018 WL 3848917, at *7 (E.D.N.Y. Aug. 13, 2018) (citations omitted).  There are three general circumstances, though, where "the actions of a nominally private entity are attributable to the state": (1) when "the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state"; (2) when "the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the state,' or the entity's functions are 'entwined' with state policies"; and (3) when "the entity 'has been delegated a public function by the state[.]'"  *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (alteration omitted) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 F.3d U.S. 288, 296 (2001)).  However, "[a]cts of private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts."  *Chan v. City of New York*, 1 F.3d 96, 106 (2d Cir. 1993) (ellipsis omitted) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982)).  In essence, to meet the state-action requirement, a plaintiff must show that the alleged action of a private individual or entity is "fairly attributable" to the state.  *Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 264 (2d Cir. 2014) (quoting *Am. Mfrs. Mut. Ins. Co.*

*v. Sullivan*, 526 U.S. 40, 50 (1999)); *see also Chan*, 1 F.3d at 106 ("Actions by a private party are deemed state action if 'there is a sufficiently close nexus between the State and the challenged action' that the actions by the private parties 'may be fairly treated as that of the State itself.'" (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974))).

"Determining whether a private party qualifies as a state actor is a fact-specific inquiry, and there is no simple line that can be used to delineate what is, or what is not, state action." *Mizrahi*, 2018 WL 3848917, at *7 (internal citations and quotations omitted); *see also Grogan*, 768 F.3d at 264 ("[The state-action] determination 'is a matter of normative judgment' that does not lend itself to brightline rules or 'rigid' criteria." (quoting *Brentwood Acad.*, 531 U.S. at 295)). The Complaint here provides some, but not much, information about Summit and its employees. The Complaint alleges that Summit is "a privately-owned security company contracted with Defendant City of New York and [was,] at all times relevant to this complaint, providing Security Support Services to [] Defendant [HRA] . . . [and] acting under the policies and procedures of the [HRA]." (Complaint, Dkt. 2, ¶ 17.)  Defendants Summit Supervisor John Doe, Summit Officer John Doe #1, and Summit Officer John Doe #2 were employees of Summit "assigned to security detail" at the HRA building in Brooklyn and, at all relevant times, allegedly "acting under the policies and procedures of the [HRA][.]"  (*Id.* ¶¶ 18–20.)

At this juncture, the Court does not engage in the fact-specific inquiry to decide whether the actions of Summit and its employees qualify as state action because even if they do, Plaintiff has not stated any plausible Section 1983 claim against Summit or its employees.  The only factual allegation in the Complaint is that, on December 19, 2019, Summit Officer John Doe #1 "became hostile and engaged an alarm" after Plaintiff refused to show certain documents when asked to do so.  (*Id.* ¶ 31.)  The Complaint also vaguely states in a conclusory manner that the same officer

had "previously created a hostile environment that resulted in [Plaintiff] being barred from all access to the procedural forum in retaliation for having invoked his constitutional right to petition for the redress of grievances." (*Id.* ¶ 29.)  These allegations, without more, do not reasonably give rise to an inference that Summit Officer John Doe #1 used excessive force or falsely arrested Plaintiff in violation of the Fourth Amendment, or that he deprived Plaintiff of the right to protest or petition in violation of the First Amendment.  Moreover, the Complaint does not include any specific factual allegations regarding Summit, Summit Supervisor John Doe, or Summit Officer John Doe #2.

Accordingly, the claims against Summit, Summit Supervisor John Doe, Summit Officer John Doe #1, and Summit Officer John Doe #2 are dismissed, but Plaintiff is given leave to amend. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Cruz*, 202 F.3d at 597–98.

c.   <u>Supervisory Defendants</u>

Plaintiff asserts a Section 1983 claim for First and Fourteenth Amendment violations against NYPD Commissioner Dermot Shea, HRA Commissioner Steven Banks, Dexterly Freeman, NYPD Lieutenant Vasquez, HRA Lieutenant Wright, OTDA Director of Hearings Samuel Spitzberg, and Attorney Nigel Marks.  (Complaint, Dkt. 2, ¶¶ 42–43.)  Plaintiff also identifies HRA Sergeant Curcio in the caption and factual allegations of the Complaint (*see, e.g.*, *id.* ¶¶ 8, 35), but does not explicitly assert any specific Section 1983 claim against Curcio.  The Section 1983 claims, if any, against these individuals (collectively, "Supervisory Defendants") are deficient as pleaded.

It is well-established "that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).  In other words,

a plaintiff must "allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  This tangible connection, or personal involvement, can be established not only by "direct participation by the supervisor in the challenged conduct," but also

> (1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates.

*Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 753 (2d Cir. 2003) (citing *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir. 2001)).  Put plainly, "[a]n individual cannot be held liable for damages under § 1983 'merely because [they] held a high position of authority[.]'" *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004) (quoting *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996)).

Here, the extent of the factual allegations against most of the Supervisory Defendants is that Plaintiff had had "communication" with Dexterly Freeman (the Deputy Commissioner of Police Operations for the HRA) prior to December 19, 2019, "regarding the acts and continued acts of his subordinate employees in obstructing or interfering with [P]laintiff during the benefit[s] process," and that Plaintiff had "filed numerous grievances and complaints," which were ignored. (Complaint, Dkt. 2, ¶¶ 35–36.)  These allegations do not give rise to a reasonable inference that the Supervisory Defendants were personally involved in allegedly retaliatory acts against Plaintiff in violation of the First Amendment.  *Cf. Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (concluding that the Commissioner of the New York State Department of Correctional Services was not personally involved in an alleged constitutional violation where the plaintiff addressed two letters to the Commissioner, the first of which the Commissioner forwarded to another official,

and the second of which was simply a request for a status update).  Plaintiff does allege that NYPD Lieutenant Vasquez was on scene at the HRA building in Brooklyn on December 19, 2019, and "failed to appropriately supervise his subordinate NYPD Police Officers and authorized an unlawful arrest of [Plaintiff]."  (Complaint, Dkt. 2, ¶ 33.)  But this allegation does not raise a plausible inference that NYPD Lieutenant Vasquez was personally involved in a retaliatory arrest in violation of the First Amendment, and Plaintiff does not name NYPD Lieutenant Vasquez in his Fourth Amendment claim.  (*See id.* ¶¶ 39–40.)

Accordingly, the Section 1983 claims against NYPD Commissioner Dermot Shea, HRA Commissioner Steven Banks, Dexterly Freeman, HRA Sergeant Curcio, HRA Lieutenant Wright, NYPD Lieutenant Vasquez, OTDA Director of Hearings Samuel Spitzberg, and Attorney Nigel Marks are dismissed.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Johnson*, 2020 WL 249100, at *3 (dismissing claims against defendant where there were no facts to support an inference of personal involvement in the alleged constitutional violations); *Leibovitz v. City of New York*, No. 15-CV-1722 (KAM), 2015 WL 3971528, at *4 (E.D.N.Y. June 30, 2015) (same).  Plaintiff is, however, given leave to amend his claims against these defendants.  *See Cruz*, 202 F.3d at 597–98.

### C.     State Constitutional Claims

In addition to federal constitutional claims under Section 1983, Plaintiff asserts claims under Article I, §§ 11 and 12 of the New York State Constitution.  (Complaint, Dkt. 2, ¶¶ 54–58.)  Article I, § 11 is the New York State analogue of the federal Equal Protection Clause and provides that "[n]o person shall be denied the equal protection of the laws of this state or any subdivision thereof."  *See* N.Y. Const., art. I, § 11; *Sullivan v. City of New York*, No. 17-CV-3779 (KPF), 2018 WL 3368706, at *19 (S.D.N.Y. July 10, 2018) ("Like its federal counterpart, [Article I, § 11] 'commands that persons similarly situated should be treated alike.'" (quoting *Walton v. N.Y. State Dep't of Corr.*, 13 N.Y.3d 475, 492 (N.Y. 2009))).  Plaintiff alleges that Defendants' actions were

17

"racially motivated" (Complaint, Dkt. 2, ¶ 55), but provides no factual allegations whatsoever that reasonably give rise to a plausible claim that he was treated differently from similarly situated individuals based on race or any other protected characteristic. Therefore, any claim under Article I, § 11 of the New York State Constitution is dismissed, although Plaintiff is given leave to amend. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Cruz*, 202 F.3d at 597–98.

Article I, § 12 of the New York State Constitution protects against "unreasonable searches and seizures." N.Y. Const., art. 1, § 12. This provision "imposes a duty regulating the conduct of police officials" and "is consistent with the search and seizure provisions found in the Federal Constitution." *Brown v. State*, 89 N.Y.2d 172, 191 (N.Y. 1996); *see also Bancroft v. City of Mount Vernon*, 672 F. Supp. 2d 391, 403–04 (S.D.N.Y. 2009) (concurrently analyzing false arrest, wrongful imprisonment, and excessive force claims brought under the Fourth Amendment to the United States Constitution and Article I, § 12 of the New York State Constitution). With respect to Summit and its employees and the Supervisory Defendants, as discussed above, Plaintiff has not alleged sufficient facts that would give rise to plausible federal constitutional claims. His analogous state constitutional claims against these defendants accordingly fail.

Moreover, "New York courts have held that a private right of action for violations of the state constitution is unavailable if an alternative remedy is available elsewhere[.]" *Alwan v. City of New York*, 311 F. Supp. 3d 570, 586 (E.D.N.Y. 2018) (collecting cases); *see also Li v. City of New York*, 246 F. Supp. 3d 578, 639 (E.D.N.Y. 2017) ("District courts in this circuit have consistently held that there is no private right of action under the New York State Constitution where . . . remedies are available under § 1983." (alteration, quotation, and citations omitted)). Thus, even if Plaintiff had alleged plausible Section 1983 claims against Summit, its employees, and the Supervisory Defendants, Plaintiff does not articulate any reason that a remedy under

§ 1983 would be inadequate, and his analogous state constitutional claims with respect to those defendants must fail. *See Sullivan*, 2018 WL 3368706, at *20 (dismissing a claim under Article I, § 12 of the New York State Constitution because the plaintiff had a viable remedy under § 1983); *Li*, 246 F. Supp. 3d at 639 (same); *see also Cooper v. City of New York*, No. 17-CV-1517 (NGG) (RLM), 2019 WL 3642996, at *16–17 (E.D.N.Y. Aug. 5, 2019) (dismissing a state constitutional claim of false arrest, false imprisonment, and excessive force because the plaintiff had an adequate alternative remedy under § 1983 as well as under state tort law). Similarly, as discussed above, the Section 1983 claims against individual NYPD and HRA officers involved in the alleged incidents on December 19, 2019, shall proceed; therefore, because Plaintiff articulates no reason that this Section 1983 remedy is inadequate, his claims against the individual NYPD and HRA officer-defendants under Article I, § 12 of the New York State Constitution fail. *See Sullivan*, 2018 WL 3368706, at *20; *Li*, 246 F. Supp. 3d at 639.

It is, however, not necessarily the case that Section 1983 always provides an adequate alternative remedy to a state constitutional claim. "Indeed, on innumerable occasions [the New York Court of Appeals] has given [the New York] State Constitution an independent construction, affording the rights and liberties of the citizens of [New York] even more protection than may be secured under the United States Constitution." *Sharrock v. Dell Buick-Cadillac, Inc.*, 45 N.Y.2d 152, 159 (N.Y. 1978) (collecting cases). In particular, as the Second Circuit has recognized, New York "has developed an independent body of state law in the area of search and seizure." *In re Nassau Cnty. Strip Search Cases*, 639 F. App'x 746, 749 (2d Cir. 2016) (summary order) (quoting *People v. Weaver*, 12 N.Y.3d 433, 445 (N.Y. 2009)); *see also California v. Greenwood*, 486 U.S. 35, 43 (1988) ("Individual States may surely construe their own constitutions as imposing more stringent constraints on police conduct than does the Federal Constitution."). Accordingly, to the

19

extent that Plaintiff articulates a reason that his Section 1983 claims are not an adequate remedy for the alleged conduct of the individual defendants, he may amend his claims under Article I, § 12 of the New York State Constitution.  *See Cruz*, 202 F.3d at 597–98; *cf. Fernandez v. City of New York*, 457 F. Supp. 3d 364, 399 (S.D.N.Y. 2020) (granting summary judgment in the defendants' favor on a claim under Article I, § 12 because the plaintiffs failed to articulate a theory on which they "would be entitled to a damage award under Article I, § 12 of the New York State Constitution, but not under Section 1983").

Finally, although Plaintiff's Article I, § 12 claims against the individual Defendants are dismissed (with leave to amend), that claim against the City of New York may proceed.  Whereas a Section 1983 claim under *Monell* may not be premised on a theory of respondeat superior, *see Monell*, 436 U.S. at 691, a similar claim under Article I, § 12 of the New York State Constitution may be, *see Brown*, 89 N.Y.2d at 193–95.  Accordingly, several courts have allowed New York state constitutional claims under a theory of respondeat superior to proceed on the ground that a *Monell* claim "is not an adequate alternative remedy."  *Alwan*, 311 F. Supp. 3d at 587 (collecting cases); *see also Hawthorne by Hawthorne v. County of Putnam*, — F. Supp. 3d —, No. 19-CV-742 (NSR), 2020 WL 5946989, at *15 (S.D.N.Y. Oct. 6, 2020); *Sullivan*, 2018 WL 3368706, at *21.  The Complaint sufficiently alleges that the NYPD and HRA officers involved in the alleged incidents on December 19, 2019, were employees of the City and acting within the scope of their employment.  (*See* Complaint, Dkt. 2, ¶¶ 10–16, 28–34.)  Hence, Plaintiff has a plausible claim against the City under Article I, § 12 of the New York State Constitution based on the alleged conduct of the NYPD and HRA officers on December 19, 2019, and that claim may proceed.

### D.    Conspiracy Claim

Plaintiff claims that Summit and its employees "knowingly conspir[ed] with the City of New York" to deprive him of his constitutional rights.  (Complaint, Dkt. 2, ¶ 60.)  Such a claim

requires showing: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (citations omitted). "A plaintiff must allege facts that plausibly suggest a meeting of minds and provide some details of time and place." *Graham v. City of New York*, 16-CV-4613 (NGG) (CLP), 2018 WL 1157818, at *9 (E.D.N.Y. Mar. 2, 2018) (quoting *AK Tournament Play, Inc. v. Town of Wallkill*, No. 09-CV-10579 (LAP), 2011 WL 197216, at *3 (S.D.N.Y. Jan. 19, 2011)). The Complaint provides no such details. Therefore, Plaintiff's conspiracy claim is dismissed, 28 U.S.C. § 1915(e)(2)(B)(ii), but he is permitted to amend his complaint to add facts and details that would plausibly suggest a "meeting of minds," *see Graham*, 2018 WL 1157818, at *9–10.

### E.    State Common-Law Malicious-Prosecution and Abuse-of-Process Claims

Plaintiff's final claim is one of malicious prosecution and abuse of process under New York common law. In particular, Plaintiff asserts that the City of New York, NYPD and HRA officers, Summit Supervisor John Doe, Summit Officer John Doe #1, and Summit Officer John Doe #2, along with other employees of the City, "maliciously commenced proceedings against" him "to cover up their own misconduct and unwarranted use of force." (Complaint, Dkt. 2, ¶¶ 63–64.) "All proceedings were terminated in [P]laintiff's favor[.]" (*Id.* ¶ 66.)

To establish a claim of malicious prosecution under New York law, a plaintiff must show: "(1) the initiation or continuation of a criminal proceeding against [the] plaintiff; (2) termination of the proceeding in [the] plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice motivating [the] defendant's actions." *Kanciper v. Lato*, 989 F. Supp. 2d 216, 236 (E.D.N.Y. 2013) (citing *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010)). "[I]ndictment by a grand jury creates a presumption of probable cause that may *only* be rebutted by evidence that the indictment was procured by 'fraud, perjury, the

suppression of evidence or other police conduct undertaken in bad faith.'" *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 83 (N.Y. 1983)).  Plaintiff asserts that the criminal proceeding commenced against him "was malicious and without probable cause," but these are legal conclusions, not factual assertions.  (*See* Complaint, Dkt. 2, ¶ 65.)  Plaintiff's Complaint provides no facts about the criminal proceeding against him, much less anything that would reasonably raise an inference that the proceeding was commenced without probable cause and motivated by malice.  Therefore, Plaintiff's malicious-prosecution claim fails and is dismissed.  28 U.S.C. § 1915(e)(2)(B)(ii).

Plaintiff's abuse-of-process claim similarly fails.  In essence, an abuse of process is "misusing or misapplying process justified in itself for an end other than that which it was designed to accomplish."  *Mangino v. Inc. Vill. of Patchogue*, 814 F. Supp. 2d 242, 247 (E.D.N.Y. 2011) (emphasis omitted) (quoting *Weiss v. Hunna*, 312 F.2d 711, 717 (2d Cir. 1963)).  As such, a plaintiff has an abuse-of-process claim "against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse o[r] justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process."  *Savino*, 331 F.3d at 76 (quoting *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)).  "A collateral objective is usually characterized by personal animus, and may include infliction of economic harm, extortion, blackmail or retribution."  *Dash v. Montas*, —F. Supp. 3d—, No. 17-CV-515 (PKC) (RER), 2020 WL 1550708, at *10 (E.D.N.Y. Mar. 31, 2020) (alterations, internal citations, and quotations omitted).  Here, the Complaint provides no factual allegations that would reasonably give rise to an inference that any criminal proceeding against Plaintiff had a goal of achieving some collateral objective.  Although Plaintiff posits that Defendants wanted to "cover up their own misconduct" (Complaint, Dkt. 2, ¶ 64), there are no

factual allegations in the Complaint about the criminal proceeding that would allow the Court to reasonably make such an inference. *Cf. Dash*, 2020 WL 1550708, at *11 (concluding that an abuse-of-process claim failed because there was no evidence to substantiate the plaintiff's assertion that the defendants' actions were motivated by racial animus). Accordingly, Plaintiff's abuse-of-process claim fails and is dismissed. 28 U.S.C. § 1915(e)(2)(B)(ii). In his amended complaint, Plaintiff may plead additional facts that would substantiate his malicious-prosecution and abuse-of-process claims. *Cruz*, 202 F.3d at 597–98.

## CONCLUSION

Plaintiff's claims against the City of New York Human Resource Administration, City of New York Police Department, and Office of Temporary and Disability Assistance are dismissed. 28 U.S.C. § 1915(e)(2)(B)(iii). No summons shall issue as to those defendants, and the Clerk of Court is respectfully directed to update and amend the caption to reflect the dismissal of these defendants.

Plaintiff is granted 45 days' leave to file an amended complaint to allege proper claims against NYPD Commissioner Dermot Shea, Samuel Spitzberg, HRA Commissioner Steven Banks, Dexterly Freeman, HRA Sergeant Curcio, HRA Lieutenant Wright, NYPD Lieutenant Vasquez of the 84th Precinct, Summit, Summit Supervisor John Doe, Summit Officer John Doe #1, Summit Officer John Doe #2, and Attorney Nigel Marks. *Cruz*, 202 F.3d at 597–98. Should Plaintiff elect to file an amended complaint, the amended complaint must comply with Rule 8(a) of the Federal Rules of Civil Procedure. It must also set forth the factual allegations to support his claims against all named Defendants. Plaintiff must identify each Defendant in both the caption and the body of the amended complaint, do so consistently, and name as proper defendants those individuals who have personal involvement in the actions he alleges in the amended complaint. Plaintiff must also provide the dates and locations for each relevant event.

Plaintiff is advised that an amended complaint does not simply add to the first complaint. Once an amended complaint is filed, it completely replaces the original. Therefore, Plaintiff must include in the amended complaint all the necessary information that was contained in the original complaint, including the claims from the original complaint that the Court has decided may proceed. The amended complaint must be captioned as an "Amended Complaint" and bear the same case number as this Order, 20-CV-3665 (PKC) (VMS). If Plaintiff fails to comply with this Order within the time allowed or fails to cure the deficiencies discussed herein, defendants Dermot Shea, Samuel Spitzberg, Steven Banks, Dexterly Freeman, HRA Sergeant Curcio, HRA Lieutenant Wright, NYPD Lieutenant Vasquez, Summit, Summit Supervisor John Doe, Summit Officer John Doe #1, Summit Officer John Doe #2, and Nigel Marks shall be dismissed from this action.

Plaintiff's federal constitutional (i.e., Section 1983) claims alleging violations of the Fourth and Fourteenth Amendments to the United States Constitution, in the form of false arrest, wrongful imprisonment, and excessive force, against HRA Sergeant Knox, HRA Officer Annette Vasquez, HRA Officer Henna, NYPD Uniformed Officer John Doe of the 84th Precinct, NYPD Uniformed Officer Jane Doe of the 84th Precinct, NYPD Plainclothes Officer Jane Doe #1, and NYPD Plainclothes Officer Jane Doe #2 shall proceed, as will Plaintiff's claim against the City of New York under Article I, § 12 of the New York State Constitution. Plaintiff is permitted to amend the other claims that have been dismissed against these defendants.

As the true identities of NYPD Uniformed Officer John Doe of the 84th Precinct, NYPD Uniformed Officer Jane Doe of the 84th Precinct, NYPD Plainclothes Officer Jane Doe #1, and NYPD Plainclothes Officer Jane Doe #2 are unknown at this time, pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997) (per curiam), the Court requests that the Corporation Counsel of the

City of New York ascertain the full names of these John and Jane Doe Defendants who were allegedly involved in the events that occurred on December 19, 2019.  The Corporation Counsel is also requested to provide the addresses where these Defendants can currently be served.  The Corporation Counsel need not undertake to defend or indemnify these individuals at this juncture. This Order merely provides a means by which Plaintiff may name and properly serve the defendants as instructed by the Second Circuit in *Valentin*.  The Corporation Counsel is further requested to produce the information specified regarding the identity of these defendants within 60 days from the entry of this Order.  Once this information is provided, Plaintiff's complaint shall be deemed amended to reflect the full names of these Defendants and the Court shall direct service on all remaining Defendants accordingly.

The Clerk of Court is respectfully directed to send a copy of this Order and Plaintiff's Complaint to the Corporation Counsel of the City of New York, Special Federal Litigation Division, and to Plaintiff.  No summons shall issue at this time.  The action is referred to the Honorable Vera M. Scanlon, Magistrate Judge, for pretrial supervision.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and IFP status is denied for the purpose of any appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: December 29, 2020
        Brooklyn, New York